Donald K. SULLIVAN, Petitioner,

v.

The INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE OF COLORADO; Colorado Army National Guard; and Colorado Compensation Insurance Authority, d/b/a Pinnacol Assurance, Respondents.

No. 99CA2203.

Colorado Court of Appeals, Div. IV.

Oct. 12, 2000.

Certiorari Denied April 9, 2001.

The Connell Law Firm, John M. Connell, Mark A. Neider, Denver, Colorado, for Petitioner.

Ken Salazar, Attorney General, John D. Baird, First Assistant Attorney General, Denver, Colorado, for Respondent, Industrial Claim Appeals Office.

Laurie A. Schoder, Denver, Colorado, for Respondents Colorado Compensation Insurance Authority, d/b/a Pinnacol Assurance, and Colorado Army National Guard.

Opinion by Judge DAILEY.

In this workers' compensation proceeding, Donald K. Sullivan (claimant) seeks review of the denial of his claim for benefits.

At issue is whether claimant was covered under the workers' compensation law as an employee of the state when, while acting as a member of the Colorado Army National Guard, he sustained serious injuries during a weekend training activity. Because we hold that claimant was not covered by the workers' compensation law while engaged in that activity, we affirm the Panel's order denying him benefits.

## I. Background

The Administrative Law Judge (ALJ) was asked to decide whether claimant was covered under § 8–40–202(1)(a)(I)(A), C.R.S. 2000, which provides that the term "employee" means "[e]very person in the service of the state ... and every member of the military forces of the state of Colorado while engaged in active service on behalf of the state under orders from competent authority...."

The ALJ first held that only the "active service" portion of the definition of employee applied in the case, and that the training exercise constituted inactive duty training with the National Guard as prescribed by 32 U.S.C. § 502 (1994). He credited witnesses connected with the state of Colorado and the National Guard who testified that claimant

was not on active service for the state at the time of his injury.

According to those witnesses, active service occurs only in those instances where the governor has issued a direct executive order calling National Guard members to active duty. Consistent with that testimony, the ALJ concluded that, although claimant was in the service of the state at the time of his injuries, he was not on active duty status, and therefore, was not a covered employee.

The Panel upheld that determination on review and affirmed denial of the claim for benefits. It adopted a construction of the relevant statutory authority similar to that applied by the ALJ and, accordingly, concluded that claimant did not qualify as a covered employee.

## II. Applicable Definition of Employee

■ Claimant initially contends that regardless of whether he qualifies as an employee under that part of § 8–40–202(1)(a)(I)(A) containing the term "active service," he nevertheless meets the definition of employee included in other applicable parts of that statute. We disagree.

Claimant relies on the introductory phrase of § 8–40–202(1)(a)(I)(A), which states that an "employee" means "[e]very person in the service of the state. . . ." He also points to § 8–40–202(2)(a), C.R.S.2000, a separate subsection, which provides that: "Notwithstanding any other provision of this section, any individual who performs services for pay for another shall be deemed to be an employee. . . ."

■ We are bound to construe the Workers' Compensation Act (Act), §§ 8–40–101, *et seq.*, C.R.S.2000, as a whole to give consistent, harmonious and sensible effect to all its parts, while furthering the General Assembly's intent. *Monfort Transportation v. Industrial Claim Appeals Office*, 942 P.2d 1358 (Colo.App.1997). Also, a special or specific statutory provision prevails over a general provision unless the general provision is later in time and the General Assembly has manifested a clear intent that the general provision should prevail. Section 2–4–205, C.R.S.

2000; *Climax Molybdenum Co. v. Walter*, 812 P.2d 1168 (Colo.1991).

Here, the phrases upon which claimant relies must be viewed in context. The first represents the beginning of a list of public entities, and it precedes the phrase specifically addressing the state military forces upon which the ALJ relied. The second phrase pertains to independent contractors and defines when a worker falls within that category. Nothing within either phrase indicates that it is to override the more specific provision applicable to state military forces.

Because § 8–40–202(1)(a)(I)(A) contains an "active service" definition of "employee" expressly directed to members of the National Guard, we consider that particular phrase to be the determinative test of claimant's status as an employee under the Act.

## III. Interpretation of Applicable Definition of Employee

Claimant next contends that the ALJ and the Panel erred in failing to find that his training exercise qualified as "active service on behalf of the state under orders from competent authority," and therefore entitled him to benefits. We disagree.

Claimant relies to a great extent on *Perpich v. Department of Defense*, 496 U.S. 334, 110 S.Ct. 2418, 110 L.Ed.2d 312 (1990). There, the United States Supreme Court recognized that members of the National Guard can be involved in federally mandated training and yet retain their status as members of the separate state guard unit. Consequently, while *Perpich* establishes that claimant could act "in service" or "on behalf" of the state, it does not address whether claimant's weekend training qualified as "active service" under order of "competent authority."

■ Our primary goal in determining the meaning of a statute is to ascertain and to give effect to the legislative intent by construing the words of the statute according to their plain and ordinary meaning. *Hussion v. Industrial Claim Appeals Office*, 991 P.2d 346 (Colo.App.1999).

■ Words and phrases with a technical or particular meaning, whether by legislative definition or otherwise, shall be construed

accordingly. *See* § 2–4–101, C.R.S.2000; *Resolution Trust Corp. v. Heiserman,* 898 P.2d 1049 (Colo.1995). The technical definition remains applicable to the term wherever it appears in the statute unless a contrary intention plainly appears, *see Farmers Insurance Exchange v. Bill Boom Inc.,* 961 P.2d 465 (Colo.1998), and statutory definitions of words used elsewhere in the same statute furnish authoritative evidence of legislative intent. *See R.E.N. v. City of Colorado Springs,* 823 P.2d 1359 (Colo.1992); *see also* 1A N. Singer, *Sutherland Statutory Construction* § 27.02 at 467 (5th ed.1992) ("internal legislative construction is of the highest value and prevails over ... other extrinsic aids").

▮ A court may also look outside the statute to related sources for the definition of an applicable term. *See Askew v. Industrial Claim Appeals Office,* 927 P.2d 1333 (Colo. 1996) (using American Medical Association Guidelines to construe applicable provisions of the Workers' Compensation Act). A court must also attempt to harmonize other statutes relating to the same subject matter. *Nelson v. Industrial Claim Appeals Office,* 981 P.2d 210 (Colo.App.1998).

The Workers' Compensation Act does not define the term "active service." However, the requirement of "active service" as a condition for the recovery of workers' compensation benefits is not imposed exclusively within the Act. Article 3 of Title 28, which governs the National Guard, requires that:

> A member of the military forces of the state of Colorado who dies or is disabled *while in, or as a result of, active service on behalf of this state ordered by competent authority,. which death or disability arises out of and in the course of his employment in the active service of the state of Colorado,* is entitled to workers' compensation benefits in accordance with the provision of the "Workers' Compensation Act of Colorado"; but no workers' compensation benefits shall be paid under this section in any case where similar benefits are payable under the provisions of any federal law or regulation.

Section 28–3–801, C.R.S.2000 (emphasis added).

Article 3 of Title 28 also contains a definitional section which explains that "active service" means "full-time service on behalf of the state when ordered by competent authority." Section 28–3–101(1), C.R.S.2000.

Other provisions of the statute explicitly link the term "active service" to a call for action by the governor in response to emergencies requiring the defense of law or the protection of life and property. *See* § 28–3–905, C.R.S.2000 (providing for the payment of expenses by the general revenue fund where military forces have been called into active service by the governor and there are no funds otherwise appropriated or available); § 28–3–1204, C.R.S.2000 (creating an active service medal to be awarded to those who are serving, or who have served, "in any campaign or period of active duty under call or order of the president of the United States or of the governor of Colorado...."); § 28–3–313, C.R.S.2000 (stating that "in time of war or other declared emergency," National Guard officers otherwise required to be retired may "be continued in the active service"); § 28–3–610.5, C.R.S.2000 (ensuring reemployment rights to private employees who have been absent from their jobs while engaged "in active service for state purposes pursuant to section 28–3–104"); § 28–3–104, C.R.S.2000 (providing that the "governor shall be the commander in chief of the military forces ... and may employ the same for the defense or relief of the state, the enforcement of its laws, and the protection of life and property therein").

Other provisions in the statute reveal that the General Assembly did not equate "active service" with weekend "training" activities. *See* § 28–3–101(6), C.R.S.2000 (defining "on duty" to include "periods of drill and such other training and service as may be required under state or federal law, regulations, or orders"); §§ 28–3–901, et seq., C.R.S.2000 (addressing training matters and providing for the governor's authority to order drill, instruction, maneuvers, and other exercises in accordance with state or federal law).

At least two statutory provisions also distinguish between "active service" on the one

hand, and "duty" and "training" on the other. *See* § 28–3–103(4), C.R.S.2000 ("[n]othing in this subsection (4) shall be construed to limit in any way the application of this article to the discipline of the Colorado national guard when on 'active service' or 'on duty' as defined in section 28–3–101"); § 28–3–601(1), C.R.S.2000 (making available to a public employee leave without loss of pay or benefit "for all the time when he is engaged . . . in training or active service ordered or authorized by proper authority pursuant to law").

These provisions all distinguish between active service and routine training activities. Had the General Assembly intended to award workers' compensation benefits for injuries incurred during routine National Guard training, it could—as it did in the case of the civil air patrol—have included specific language to that effect in § 8–40–202(1)(a)(I)(A). *See National Farmers Union Property & Casualty Co. v. Estate of Mosher,* 22 P.3d 531, (Colo.App. 2000) (if the General Assembly intended the statute to achieve a certain result, it would have employed terminology clearly expressing that intent, as it has done in other circumstances).

■ We therefore hold that to be on "active service," and hence qualified for workers' compensation benefits, a member of the National Guard must be ordered by the governor to provide full-time service, even if temporarily, in response to an emergency confronting the state.

We recognize that courts in other jurisdictions have reached differing conclusions regarding the availability of workers' compensation benefits for injured National Guard personnel, but they have done so by interpreting somewhat different statutory frameworks. *Compare Atkins v. State, Department of Highway Safety and Motor Vehicles,* 383 So.2d 313 (Fla.App.1980) (workers' compensation claim *denied* because claimant injured during annual training with the National Guard was not in "active service" as defined under state statute); *Daniels v. Missouri Army National Guard,* 902 S.W.2d 301 (Mo. App.1994) (claimant injured while on active duty in Honduras was *denied* benefits because he was not on "active state duty");

*with Kaya v. Hawaii,* 72 Haw. 157, 809 P.2d 1136 (1991) (guardsman injured in the "line of duty" while on federal active duty was *allowed to recover* workers' compensation benefits because under the pertinent state statutes, members of the National Guard are eligible for such benefits if the injury arose "out of and in the performance of the member's duty"); *Tulppo v. County of Ontonagon,* 207 Mich.App. 277, 523 N.W.2d 883 (1994) (National Guard member injured during his day job *could recover* compensation benefits based also upon his wages for National Guard duty).

We · reject claimant's contention that the ALJ and the Panel impermissibly relied on the claimant's receipt of federal benefits. It is correct that no findings were made regarding the actual receipt of federal benefits. However, the mention of federal benefits was made only in the context of a reference to § 28–3–801, which evinces the General Assembly's intent that workers' compensation benefits be unavailable to those members of the National Guard who are eligible for similar benefits under federal law. Section 28–3–801 contradicts claimant's argument that the interpretation given to § 8–40–202(1)(a)(I)(A) is contrary to the beneficent goals of the Act.

*IV. Application of Interpreted Definition*

■ Here, the record shows that the training exercise in which claimant participated at the time of his injury was a routine drill that began on a Friday evening and was scheduled to end the following Sunday afternoon. The training fulfilled federal requirements which mandate exercises one weekend a month and two weeks per year. It did not interfere with claimant's full-time employment as a guard technician with the Department of the Army at the Department of Logistics warehouse. Thus, the training fell within the provisions of §§ 28–3–901, et seq., as well as the definition of the phrase "on duty" set forth in § 28–3–101(6).

However, because, as claimant stipulated, the governor had not issued an executive order of activation in the period when claimant suffered his injuries, the record supports the ALJ's finding that claimant was not in

active service at the time of his injuries and, therefore, was ineligible for workers' compensation benefits.

The Panel's order is affirmed.

Judge MARQUEZ and Judge ROTHENBERG, concur.